UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ISAAC NARANJO,                              :
    Plaintiff                               :
                                            :
    v.                                      :   CIVIL NO. 1:11-CV-1304
                                            :
JAMES LUCZAK, *et al.*,                     :
    Defendants                              :

*M E M O R A N D U M*

*I.        Introduction*

        We are considering cross-motions for summary judgment.  (Doc. 72; Doc.

79).  This case relates to a civil rights action in which Plaintiff, a pro se prisoner, alleges

that Defendants, employees of the State Correctional Institute at Dallas, used excessive

force, retaliated against him for exercising his First Amendment rights, and denied him

procedural due process during misconduct hearings.  (Doc. 13).  On November 23, 2015,

Plaintiff filed a motion for summary judgment on one of his due process claims.  (Doc. 72).

In response, Defendants filed a cross-motion, arguing they are entitled to summary

judgment on all of Plaintiff's due process and retaliation claims.  (Doc. 79).  For the

reasons discussed below, we will grant Defendants' motion and deny Plaintiff's motion

with respect to the due process claims, and we will grant in part and deny in part

Defendants' motion on the retaliation claims.

*II.          Background*

Between 2010 and 2011, Plaintiff was housed as an inmate at the State

Correctional Institute in Dallas, Pennsylvania (SCI Dallas).  (Doc. 13 at 1-2).  Gilberto

Melendez was housed with Plaintiff at SCI Dallas during the same time period.  (Doc. 83

at 14-15).  In October of 2010, Melendez filed a civil rights action against Jane M. Jesse, a

prison physician.  See Melendez v. Jesse, No. 4:10-CV-2061, 2011 WL 1793268 (M.D.

Pa. May 11, 2011) (dismissing case for failure to prosecute).  Plaintiff alleges that the

lawsuit caused Defendants to retaliate against Melendez, including prohibiting Melendez

from speaking Spanish, denying him church service, and denying him food.  (Doc. 13 at

Doc. 83 at 16).  According to Plaintiff, the retaliatory acts prompted Melendez to file a

series of grievances and to add Defendants Pruitt and Skutack as named defendants in

the federal civil rights action against Jesse.  (Doc. 13 at 1-2; Doc. 92-4 at 18-28); see also

Melendez, 2011 WL 1793268.  Melendez filed the grievances and amended complaint in

December of 2010.  Melendez, No. 4:10-CV-2061 (indicating amended complaint filed on

December 22, 2010).  Plaintiff was named in those filings as a witness of Defendants'

purported retaliatory acts.  (Id.).

Plaintiff claims that shortly after being identified as a witness, Defendants

began calling him a "snitch."  (Doc. 83 at 23-25).  According to Plaintiff, the name calling

escalated on February 11, 2011, when he was allegedly assaulted by Defendants.  (Doc.

13 at 2-3).  Plaintiff avers that following breakfast he approached Defendant Luczak and

requested that Luczak place him on the gym list.  (Doc. 83 at 23-29).  Luczak responded

by stating, "You want me to do you a favor after you snitched on us?"  (Doc. 13 at 2; Doc.

83 at 29).  As Plaintiff turned and walked toward his cell, Defendant Pruitt told Plaintiff,

"Don't worry, we have something for you later." (Doc. 13 at 2).  At approximately 8:30 a.m., Luczak opened the cell doors for inmates to go to the gym but did not open Plaintiff's door.  (Id. at 2).  Despite Plaintiff yelling at Luczak to open his door, Plaintiff's door remained closed.  (Id.).  After all the other inmates left for the gym, Luczak opened Plaintiff's cell door and ordered him into the "dayroom."  (Id.; Doc. 83 at 31).

Upon entering the dayroom, Plaintiff claims that Luczak pushed him to the floor, put his boot over his right hand, and called him a snitch.  (Doc. 83 at 31-32).  He asserts that Defendant Pruitt, holding one hand over Plaintiff's mouth and one hand on the back of Plaintiff's head, pushed Plaintiff's head into the concrete floor.  (Id.).  According to Plaintiff, Defendants Luczak, Pruitt, and Skutack then repeatedly kicked, punched, and spat on him.  (Id.).  He also maintains that Defendant Skutack struck him on the "buttock in a sexual manner."  (Doc. 13 at 3).  Following the purported assault, Plaintiff asserts that another guard, Sergeant Mosier, looked in the dayroom, smiled, and said, "That's what we do in SCI Dallas."  (Id.).

On the same day, Defendants filed a misconduct report against Plaintiff setting out a starkly different version of events.  (Doc. 92-4 at 40).  The report states that upon exiting his cell, Plaintiff walked up to Defendant Luczak's desk and began a verbal confrontation by stating: "Your [sic] playing fucking games with me by hitting my door last. You know how I roll.  Keep fucking with me and I'll punch your face in."  (Id.).  Luczak instructed Plaintiff to relinquish his gym pass and return to his cell, which Plaintiff refused to do.  (Id.).  Instead, Plaintiff walked into the dayroom.  (Id.).  Luczak secured Plaintiff in the dayroom by locking the door behind him.  (Id.).  When interviewed by a prison investigator about the incident, Defendants stated that they did not touch Plaintiff.  Rather,

they claim Plaintiff punched a bench in the dayroom and repeatedly struck his head against the wall. (Id. at 42-60).  This version of events was supported by the witness statements of other prison officials – namely, Sergeant Mosier, Officer Marc Volack, and Officer Joseph Hogan – who stated that Plaintiff repeatedly struck his own head against the west wall of the dayroom. (Id.).  For these actions, Defendant Luczak filed a misconduct report charging Plaintiff with (1) threatening an employee, (2) using abusive, obscene, or inappropriate language toward an employee, and (3) refusing to obey an order.  (Id. at 40).

On February 16, 2011, Defendant McKeown held a hearing on the misconduct report filed against Plaintiff.  (Doc. 83 at 58-59).  Plaintiff submitted forms requesting the following for his hearing: (1) a witness; (2) medical reports and photographs; (3) surveillance footage of the dayroom; (4) assistance by Dr. Stanley Bohinski; and (5) a translator.  (Id.).  Defendant McKeown denied Plaintiff's requests and found him guilty on all charges.  (Id.).  McKeown sanctioned Plaintiff with 180 days disciplinary time in the restricted housing unit and loss of his prison job.  (Id. at 59).  Plaintiff alleges that he received this punishment with no explanation of McKeown's findings.  (Doc. 13 at 4).

On March 17, 2011, Agent Steven Allen of the Office of Special Investigations and Intelligence interviewed Plaintiff about allegations made by Gilberto Melendez concerning verbal abuse that occurred on February 16, 2011.  (Doc. 83 at 68).  Identifying them through their employee photographs, Plaintiff told Allen that he witnessed Correctional Officer Bolesta and Correctional Officer Teetsel threaten and harass Melendez.  (Id.).  Upon further investigation, including a review of the prison surveillance

system, Allen found this statement to be false.  (Id.).  Allen learned that Gilberto Melendez

was transported from SCI Dallas to SCI Graterford at 11:20 a.m. on February 16, 2011

and that Bolesta and Teetsel did not enter SCI Dallas until two and a half hours later at

1:49 p.m.  (Id.).  Accordingly, Allen issued a misconduct report against Plaintiff for lying to

an employee.  (Id.).

On April 7, 2011, Defendant McKeown held another misconduct hearing.

(Doc. 83 at 69).  Plaintiff asserts that on the day of the hearing he submitted an inmate

witness form.  (Id.).  He claims that he requested three witnesses, a translator, and

assistance from a prisoner.  (Id.; Doc. 13 at 7).  McKeown denied those requests and

found Plaintiff guilty of the offense.  (Doc. 83 at 69-70; Doc. 84 at 1).  McKeown

sanctioned Plaintiff with ninety days in the restricted housing unit.  (Doc. 84 at 1).  Plaintiff

alleges that he never received a written notification or explanation of McKeown's findings.

(Doc. 13 at 7-8).

On July 13, 2011, Plaintiff filed his complaint in this court.  Broadly

construed, Plaintiff sets out five civil rights claims pursuant to 42 U.S.C. § 1983: (1)

Defendants used excessive force by punching and kicking Plaintiff; (2) Defendants' use of

force was in retaliation for Plaintiff being a witness in Gilberto Melendez's federal civil

rights case; (3) Defendant Luczak issued a false misconduct report about the February 11,

2011 incident in retaliation for Plaintiff being a witness in Melendez's case; (4) Defendant

McKeown denied Plaintiff procedural due process during the hearing on February 16,

2011; and (5) Defendant McKeown denied Plaintiff procedural due process during the

hearing on April 7, 2011.  (Doc. 13).  Plaintiff seeks summary judgment on his due process

claim stemming from the February 16, 2011 misconduct hearing.  (Doc. 72).  Defendants

seek summary judgment on all claims except the excessive force claim.  (Doc. 79).

*III.*        *Discussion*

        *A.  Standard of Review*

        We will examine the motion for summary judgment under the well-

established standard:  summary judgment will only be granted if there are no genuine

issues of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(a); Lawrence v. City of Phila, 527 F.3d 299, 310 (3d Cir. 2008).

"Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute

about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to

return a verdict for the nonmoving party.'"  Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir.

2011) (quoting Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).  We "must view

all evidence and draw all inferences in the light most favorable to the non-moving party,"

and we will only grant the motion "if no reasonable juror could find for the non-movant."

Lawrence, 527 F.3d at 310.  Summary judgment will be granted "against a party who fails

to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  With this standard in mind, we start with Plaintiff's

retaliation claims.

        *B.  Retaliation Claims*

        To establish a retaliation claim, Plaintiff "must show (1) constitutionally

protected conduct, (2) an adverse action by prison officials sufficient to deter a person of

ordinary firmness from exercising his constitutional rights, and (3) a causal link between

the exercise of his constitutional rights and the adverse action taken against him." Mitchell

v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  If the prisoner establishes this prima facie case

of retaliation, the burden then shifts to the prison official to show by a preponderance of

the evidence that his action would have been the same, even in the absence of protected

activity.  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).  If the prison official can make

this showing, he defeats the retaliation claim.  Carter v. McGrady, 292 F.3d 152, 159 (3d

Cir. 2002).

        Defendants assume, for purposes of the instant motion, that Plaintiff can

satisfy the first two elements on both retaliation claims.  (Doc. 80 at 6).  With respect to

Plaintiff's claim that Defendants used excessive force in retaliation for being a witness,

however, Defendants argue that they are entitled to summary judgment because Plaintiff

cannot show causation.  (Id. at 6-7).  Further, with respect to Plaintiff's claim that

Defendant Luczak retaliated against him by filing a false misconduct report, Defendants

argue that Luczak is entitled to summary judgment because Plaintiff would have received

a misconduct report even if he was not a witness.  (Id. at 7).  We address each argument

in turn.

### 1. Retaliation by Excessive Force

        The causation element of a retaliation claim is met if the plaintiff shows that

his protected conduct was a substantial or motivating factor in the decision to engage in

the retaliatory act.  Rauser, 241 F.3d at 333.  To make this required showing, the plaintiff

must "prove either (1) an unusually suggestive temporal proximity between the protected

activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with

timing to establish a causal link." Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Defendants assert that Plaintiff can show neither. First, they point out that Melendez's amended complaint was dismissed before they were served. (Doc. 80 at 6-7); Melendez, 2011 WL 1793268. Further, they note that Plaintiff did not tell Agent Allen that he witnessed prison officials verbally abusing Melendez until March 16, 2011 – over a month after the alleged retaliation. (Id.). Thus, Defendants argue that they had no knowledge of Plaintiff's status as a witness at the time of the alleged retaliation, and therefore, Plaintiff cannot establish the requisite timing. (Id.).

We find that material disputes of fact concerning the timing of Defendants' knowledge preclude summary judgment. First, contrary to Defendants' arguments, Plaintiff has produced evidence that Defendants called him a snitch prior to, during, and immediately after the alleged beating.[1] (Doc. 13 at 2-3; Doc. 83 at 25-32). Second, even if we assume *arguendo* that Defendants did not know the contents of Melendez's amended complaint, this does not necessarily establish that Defendants lacked knowledge of Plaintiff's participation as a witness and foreclose the existence of a causal link. In addition to the amended complaint, Plaintiff has also produced evidence that (1) Melendez filed grievances prior to the alleged retaliation, and (2) Defendants learned that Plaintiff was a witness through those grievances. (Doc. 83 at 27-28; Doc. 92-4 at 18-28). Viewing all of this evidence in the light most favorable to Plaintiff, we find that a reasonable juror

---

1. Defendants argue that Plaintiff cannot avoid summary judgment by relying solely on self-serving affidavits to create an issue of fact. (Doc. 80 at 7). We agree that a party opposing a motion for summary judgment cannot rely on a self-serving affidavit in the face of overwhelming documentary evidence in the record. See Nationwide Mut. Ins. Co. v. Roth, 252 F. App'x 505, 508 (3d Cir. 2007). As discussed below, however, Plaintiff has submitted grievances that support the timing assertions he makes in his affidavit. Therefore, Plaintiff's evidence does not consist solely of a self-serving affidavit.

could find a pattern of antagonism coupled with timing.[2]  Accordingly, these factual

disputes must be resolved by a trier of fact.

### 2. Retaliation by False Misconduct Report

To prove that Defendant Luczak would have filed a misconduct report

against Plaintiff, even in absence of Plaintiff's protected conduct, Defendants must show

that the misconduct report was for "reasons reasonably related to a legitimate penological

interest." Rauser, 241 F.3d at 334.  In the context of false-misconduct allegations,

Defendants can make this showing by establishing that a prison hearing officer found the

plaintiff guilty of the offense charged and there was some evidence to support that finding.

Nifas v. Beard, 374 F. App'x 241 (3d Cir. 2010); Mobley v. Lantz, No. 1:13-CV-1804, 2016

WL 1221729 (M.D. Pa. March 29, 2016) (Caldwell, J.).  This is so because if there is some

evidence to support a hearing officer's finding that an inmate violated prison rules, courts

will not disturb that finding – and if the inmate actually violated prison rules, the

misconduct cannot be false and no retaliation claim can lie.  Romansky v. Stickman, 147

F. App'x 310, 312 (3d Cir. 2005) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.

1994); Ingram v. SCI Camp Hill, No. 3:08-CV-0023, 2010 WL 4973302 at *15 (M.D. Pa.

Dec. 1, 2010) (Jones, J.).

A determination of whether there is some evidence to support the decision

"does not require examination of the entire record, an independent assessment of the

---

2. We agree with Defendants that Plaintiff cannot establish causation by showing an unusually suggestive temporal proximity.  The mine run of cases to consider similar timeframes have held that two months is not short enough to be "unusually suggestive." See Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004); DeFranco v. Wolfe, 387 F. App'x 147, 155 (3d Cir. 2010). Cf. Booze v. Wetzel, No. 1:12-CV-01307, 2015 WL 1219259 (M.D. Pa. March 17, 2015) (adopting recommendation to permit claim to proceed on the basis that two months was unusually suggestive).

credibility of witnesses, or a weighing of the evidence." Lang v. Sauers, 529 F. App'x 121,

123 (3d Cir. 2013) (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). "This

requirement is minimal, and is satisfied if there is 'any evidence in the record that could

support the conclusion reached by the'" hearing officer. Deen–Mitchell v. Bledsoe, 548 F.

App'x 747, 750 (3d Cir. 2013) (quoting Superintendent v. Hill, 472 U.S. 445, 454-56

(1985)). The requirement can be met by a misconduct report containing hearsay. Ortiz v.

Holt, 390 F. App'x 150, 152 (3d Cir. 2010).

Here, there is some evidence to support the hearing officer's finding that

Plaintiff violated prison rules on February 11, 2011. The misconduct report filed by Luczak

stated that after leaving his cell, Plaintiff told Luczak, "keep fucking with me and I'll punch

your face in." (Doc. 92-4 at 40). It also stated that Luczak ordered Plaintiff to relinquish

his gym pass and return to his cell, which he refused to do. (Id.). These hearsay

statements alone are "some evidence" that Plaintiff threatened an employee, used abusive

language toward an employee, and refused to obey an order. Because there is some

evidence to support the hearing officer's finding of guilt, Plaintiff's claim that Defendant

Luczak retaliated against him by filing a false misconduct report must fail. Mobley, 2016

WL 1221729 at *4-5. Accordingly, we will grant Defendants' motion for summary

judgment on this claim.

*C. Procedural Due Process Claims*

Plaintiff claims that he is entitled to summary judgment on his procedural due

process claim arising from the February 16, 2011 misconduct hearing. (Doc. 73). He

argues that Defendant McKeown's refusal to allow him to call witnesses, present evidence,

use an interpreter, and receive assistance from a staff member denied him the procedural

safeguards required under Wolff v. McDonnell, 418 U.S. 539 (1974). (Id. at 2-10).

Conversely, Defendants argue they are entitled to summary judgment on both of Plaintiff's

due process claims because (1) Plaintiff was not entitled to the procedural protections

enunciated in Wolff, and (2) if he was entitled, Plaintiff received all the process he was due.

(Doc. 80 at 7-10).

The Fourteenth Amendment provides that no state shall "deprive any person

of life, liberty or property, without due process of law." U.S. CONST. amend. XIV. Thus, to

establish a violation of procedural due process, Plaintiff must first show that he had a life,

liberty or property interest of which he was deprived.[3] Shoats v. Horn, 213 F.3d 140, 143

(3d Cir. 2000). The Third Circuit has recognized that "inmates are generally not entitled to

procedural due process in prison discipline hearings because the sanctions resulting from

those hearings do not usually affect a protected liberty interest." Burns v. Pa. Dep't of Corr.,

642 F.3d 163, 171 (3d Cir. 2011). Pursuant to the Supreme Court's holding in Sandin v.

Conner, 515 U.S. 472 (1995), an inmate only has a protected liberty interest in freedom

from restraint that "imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."[4] Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

---

3. Because Plaintiff does not allege that he was deprived of life or property, we focus our discussion on whether Plaintiff was deprived a liberty interest.

4. The Third Circuit has recognized that prison disciplinary proceedings may also "constitute a denial of due process in the context of a civil rights action under § 1983 when they are initiated for the sole purpose of retaliating against the inmate for exercising a constitutional right." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002). Here, because we held that Plaintiff failed to establish that Defendant Luczak retaliated against him by filing a misconduct report, Plaintiff is unable to show that disciplinary proceedings were initiated for the sole purpose of retaliating against him. Iwanicki v. Pa. Dep't of Corr., 582 F. App'x 75, 81 (3d Cir. 2014) (dismissing claim because inmate failed to state a retaliation claim); see also Thomas v. McCoy, 467 F. App'x 94, 96 n.3 (3d Cir. 2012) (indicating that such claims are properly analyzed as retaliation claims, not due process claims). Therefore, to the extent that Plaintiff attempts to assert such a due process claim, Defendants are entitled to summary judgment.

We find that the sanctions imposed against Plaintiff do not reach this threshold.  Following his misconduct hearings on February 16, 2011 and April 7, 2011, Defendant McKeown sanctioned Plaintiff to restricted housing for 180 days[5] and ninety days, respectively.  (Doc. 83 at 59; Doc. 84 at 1).  While assigned to restricted housing, Plaintiff alleges that he had limited exercise time and was denied the opportunity to attend classes, make phone calls, and go to the commissary and library.  (Doc. 13 at 10).  The Third Circuit has repeatedly held that assigning an inmate to disciplinary housing for similar durations with similar conditions is not an atypical or significant hardship.  Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (stating fifteen months not atypical); Diaz v. Canino, 502 F. App'x 214, 218 (3d Cir. 2012) (stating twelve months not atypical); Mackey v. Smith, 249 F. App'x 953, 954 (3d Cir. 2007) (stating that five hours of exercise per week, three showers per week, and one phone call in a thirty-day period did not amount to atypical hardships in relation to ordinary incidents of prison life).  Therefore, Plaintiff enjoyed no liberty interest and was not entitled to protection under the Due Process Clause of the Fourteenth Amendment.  Accordingly, we will grant Defendants' motion for summary judgment on Plaintiff's due process claims.

### D.  Pendent State Claims

Finally, relying on 28 U.S.C. § 1367(c)(3), Defendants ask us to decline to exercise supplemental jurisdiction over any state claims that Plaintiff asserts.  (Doc. 80 at 11-12).  Pursuant to § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over pendent state-law claims if the district court has dismissed all claims over

---

5.  Although Plaintiff was also sanctioned with the loss of his prison job, an inmate's expectation of keeping his prison job does not amount to a property or liberty interest. James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989).

which it has original jurisdiction.   28 U.S.C. § 1367(c)(3).  Here, not only have we denied

Defendants' summary judgment motion with respect to one of Plaintiff's retaliation claims,

but Defendants elected not to move for summary judgment on Plaintiff's excessive force

claim.   Therefore, Plaintiff has two remaining § 1983 claims over which we maintain

original jurisdiction.  Accordingly, we lack authority to decline supplemental jurisdiction

under § 1367(c)(3).

*IV.        Conclusion*

        For the reasons discussed above, we will grant Defendants' motion for

summary judgment with respect to (1) Plaintiff's procedural due process claims and (2)

Plaintiff's claim that Defendant Luczak retaliated against him by filing a false misconduct

report.   We will deny Defendants' motion with respect to Plaintiff's claim that Defendants

retaliated against him by using excessive force, and we will deny their motion to decline

supplemental jurisdiction over Plaintiff's pendent state claims.  Plaintiff's motion for

summary judgment will be denied.  We will issue an appropriate order.