IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ISAAC NARANJO, | : | CIVIL ACTION NO. 1:11-CV-1304 |
|---|---|---|
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| JAMES LUCZAK, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Isaac Naranjo ("Naranjo") filed a pretrial motion *in limine* (Doc. 160) seeking to exclude certain other-act evidence at his upcoming civil rights trial. He also filed several unrelated motions involving his pretrial memorandum. (Docs. 158, 162). For the following reasons, the court will deny Naranjo's motion *in limine*, and will grant his other motions.

### I. Factual Background & Procedural History

Naranjo is a former inmate of the State Correctional Institution in Dallas, Pennsylvania ("SCI Dallas"). (Doc. 13 at 1). He currently is incarcerated in a different state correctional facility. (See, e.g., Doc. 164 at 3). In July of 2011, Naranjo commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, in which he alleged various constitutional violations by SCI Dallas officials and personnel. (Doc. 1).

Over the extensive course of litigation, Naranjo's claims have been significantly circumscribed. (See generally Docs. 8, 9, 95, 96). The only remaining claims stem from an incident that occurred at SCI Dallas on February 11, 2011.

(Doc. 95 at 2). According to Naranjo, on that day three SCI Dallas corrections officers assaulted him in retaliation for his involvement as a witness in another inmate's grievance investigation and related lawsuit. (Id. at 2-3).

The corrections officers—James Luczak ("Luczak"), Ronald Pruitt ("Pruitt"), and Michael Skutack ("Skutack"), (collectively, "defendants")—deny Naranjo's allegations, and contend that Naranjo's injuries were self-inflicted. (Id. at 3-4). In December of 2015, the four remaining defendants moved for summary judgment on all pending claims except Naranjo's Eighth Amendment excessive force claim. (Doc. 79). The Honorable William W. Caldwell granted in part and denied in part defendants' motion. (Docs. 95, 96). Specifically, Judge Caldwell held that Naranjo's First Amendment retaliation claim based on the alleged assault survived Rule 56 scrutiny. (Doc. 95 at 7-9). Judge Caldwell also dismissed the fourth defendant, Charlie McKeown, leaving only Luczak, Pruitt, and Skutack as defendants. (Doc. 96 at 1). The Eighth Amendment excessive force and First Amendment retaliation claims against Luczak, Pruitt, and Skutack are the only claims remaining for trial.

The court secured *pro bono* counsel to represent Naranjo. (Doc. 140). In June of 2017, this case was reassigned from Judge Caldwell to the undersigned. Trial was set for January 8, 2018, (Doc. 148), but was postponed at defense counsel's request. (Doc. 152 at 2-3). In the interim, Naranjo moved to proceed *pro se*, (Docs. 153, 154), and Naranjo's *pro bono* counsel moved to withdraw, (Doc. 156). The court granted these motions and designated Naranjo as proceeding *pro se*. (Doc. 157).

Naranjo thereafter filed the instant motion *in limine*. (Doc. 160). The motion is fully briefed and ripe for disposition.

**II.     Discussion**

Naranjo seeks to exclude certain evidence that he believes defendants intend to introduce during the upcoming trial. (Id. at 2). Specifically, Naranjo asserts that defendants will attempt to admit his prior convictions and those of his witnesses, his prior disciplinary records, and irrelevant medical records. (Id. at 3-6). In response, defendants aver that the only other-act evidence they intend to proffer at trial relates to Naranjo's prior acts of self-harm, which include "banging his head on a wall, using his finger to cause nose bleeds, and trying to hang himself." (Doc. 163 at 3). Defendants posit that such evidence is admissible under Federal Rule of Evidence 404(b)(2). (Id. at 3-6). We address the parties' arguments concerning admissibility of Naranjo's prior acts of self-harm *seriatim*.

   **A.     Relevancy**

Naranjo first contends that the prior act evidence is irrelevant. Evidence is relevant when it tends to "make a fact more or less probable than it would be without the evidence" and that fact is consequential to the outcome of the case. FED. R. EVID. 401. Rule 401's definition of relevant evidence is "very broad" and "does not raise a high standard." Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 544 (3d Cir. 2007) (citation omitted).

There is little doubt that the other-act evidence purportedly demonstrating that Naranjo inflicted injuries on himself in the past is "relevant" to the current claims. If believed, the fact that Naranjo caused similar self-harm in the past makes the fact that he caused self-harm in the instant matter—a consequential fact in the

3

outcome of this case—"more . . . probable than it would be without the evidence." FED. R. EVID. 401.

This is almost always the case with similar other-act evidence. As the Third Circuit has explained, prior convictions are indisputably relevant for purposes of Rule 401, at least insofar as prior offenses make it more likely that a criminal defendant would commit the same crime again. United States v. Caldwell, 760 F.3d 267, 274 (3d Cir. 2014); see also David P. Leonard, THE NEW WIGMORE: A TREATISE ON EVIDENCE: EVIDENCE OF OTHER MISCONDUCT AND SIMILAR EVENTS § 1.2 (2018). That same logic applies equally to the instant prior acts of self-harm. The real issue, rather than relevance, is whether the other-act evidence defendants intend to introduce is admissible under Federal Rule of Evidence 404(b).

### B. Admissibility Under Rule 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). An exception to this rule provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). Rule 404(b) applies to criminal and civil cases alike. Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520 (3d Cir. 2003) (citing FED. R. EVID. 404 advisory committee's note).

"Rule 404(b) is a rule of general exclusion," precluding other-act evidence unless the proponent can show a proper purpose other than propensity. United

4

States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (quoting Caldwell, 760 F.3d at 276). Rule 404(b) carries "no presumption of admissibility," and thus the proponent of other-act evidence bears the burden of demonstrating its applicability. Caldwell, 760 F.3d at 276 (internal quotation marks and citation omitted).

Admission of other-act evidence under Rule 404(b) requires satisfaction of four distinct steps. Id. First, the proponent of the other-act evidence must identify a proper, non-propensity purpose that is "at issue" in, or relevant to, the case at hand. Id. Second, after identifying a proper non-propensity purpose that is "at issue," the proponent must carefully articulate how the other-act evidence is relevant to proving that purpose without relying on propensity. Id. This step requires the proponent to set forth a "chain of inferences" that connects the other-act evidence to the proper purpose, "no link of which is a forbidden propensity inference." Id. at 277 (quoting United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013)). Third, the court must perform a Rule 403 balancing analysis to ensure that the probative value of the other-act evidence is not substantially outweighed by its "inherently prejudicial nature[.]" Id. at 277 (citation omitted). Finally, if requested, the court must provide a proper limiting instruction. Id. (citations omitted). This Rule 404(b) process demands "careful precision" from both the proponent of the other-act evidence and the trial judge determining its admissibility. United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) (citing Caldwell, 760 F.3d at 274).

Defendants—the proponents of the Rule 404(b) evidence—contend the evidence is admissible to show "a practice and pattern of self-injurious behavior," and to demonstrate Naranjo's "motive to fabricate injuries." (Doc. 163 at 6).

5

According to defendants, in 2007, 2009, and 2010, Naranjo "frequently attempted self-harm or threatened to harm himself, in order to avoid placement in disciplinary custody and instead receive placement in the infirmary under suicide watch." (Id.)

Defendants have satisfied the first step in the Rule 404(b) analysis. That is, they have identified a non-propensity purpose that appears to be at issue in this case: motive.[1] Motive is one of the enumerated exceptions to the general rule of exclusion of other-act evidence. FED. R. EVID. 404(b)(2). More importantly, motive appears to be genuinely at issue here. According to defendants' theory, Naranjo was not assaulted by the corrections officers but actually inflicted the injuries on himself. (See Doc. 92-4 at 42-60). Presumably, part of this defense will include explaining to the jury why Naranjo would physically injure himself.

The second step in the Rule 404(b) process is crucial. Caldwell, 760 F.3d at 276. The proponent must do more than merely "pigeonhole" the evidence into one of the categories permitted by Rule 404(b)(2), but instead must demonstrate that the other-act evidence actually "prove[s] something other than propensity." Id. (alteration in original) (citation omitted). Thus, "[i]n proffering such evidence, the [proponent] must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." Davis, 726 F.3d at 442 (citing United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992)). Stated differently, the proponent must explain "how

---

[1] Defendants also appear to contend that the other-act evidence is admissible under Rule 404(b) to show "a practice and pattern." (Doc. 163 at 3, 6). As this contention is completely undeveloped, a chain of inferences is not articulated, and no relevant case law is cited in support, we reject this proffered non-propensity purpose.

the evidence should work in the mind of a juror to establish the fact the [proponent] claims to be trying to prove." Repak, 852 F.3d at 244 (citation and internal quotation marks omitted). The proponent must carefully articulate this chain of inferences "because, even when a non-propensity purpose is 'at issue' in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." Id. at 243 (alterations in original) (quoting Caldwell, 760 F.3d at 281).

Defendants contend the other-act evidence will show that Naranjo frequently attempted or threatened similar self-harm to avoid placement in disciplinary custody and instead be placed in the infirmary under suicide watch. If the proffered evidence indeed shows that Naranjo injured himself or attempted to injure himself and that such actions resulted in some type of custodial benefit, that other-act evidence will be probative and relevant to establishing the proffered non-propensity purpose of motive. That is, a juror could reasonably infer from the other-act evidence that Naranjo successfully avoided disciplinary custody in the past by inflicting or threatening self-harm, and thus further infer that his motive for purportedly "banging his head on a wall and against a steel cage" in the instant case was to avoid disciplinary custody. This is a logical chain of inferences tending to prove the non-propensity purpose of motive without relying on a forbidden propensity inference—i.e., because Naranjo inflicted self-harm in the past, he inflicted self-harm in this case.

We caution defendants that if their evidence fails to demonstrate what they claim,[2] their Rule 404(b) chain of inferences could disintegrate. For example, if the proffered evidence simply shows that in 2007, 2009, and 2010 Naranjo injured himself due to severe depression, that evidence will be inadmissible because a forbidden propensity inference would be required in the chain of reasoning. Rather, the other-act evidence must show, as defendants claim, that Naranjo somehow benefitted from his prior intentional acts of self-harm, such that a juror could reasonably infer from those other acts that Naranjo's motive to commit self-harm in the instant case was to gain a similar advantage.

At step three, the court must perform a Rule 403 balancing test. Rule 403 provides that relevant evidence may be excluded "if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403 (emphasis added).

Defendants correctly note that demonstrating motive for self-harm is highly probative to their theory of defense. (Doc. 163 at 6). That is, absent corroborative evidence, a reasonable juror might have difficulty believing that Naranjo "would bang his head against the wall" and blame the injuries on the prison staff. (Doc. 163 at 6). This other-act evidence is also significantly prejudicial to Naranjo, as is most similar other-act evidence. However, on balance, the court cannot say that the

---

[2] Defendants have provided no documentation or verification regarding the proffered prior self-harm evidence. They have simply claimed that Naranjo's prior self-harm includes "banging his head on a wall, using his finger to cause nose bleeds, and trying to hang himself," (Doc. 163 at 3), and that Naranjo's motivation for these acts was to obtain more favorable custodial conditions, (id. at 6, 7).

8

probative value of the evidence is "substantially" outweighed by the prejudicial effect. Therefore, defendants have satisfied step three.

Lastly, if requested, an appropriate limiting instruction will be given by the court directly after the evidence is admitted and also during the final jury instructions to help reduce the risk of unfair prejudice. Naranjo must request that a limiting instruction be given, see Caldwell, 760 F.3d at 277; see also United States v. Gomez, 763 F.3d 845, 860 (7th Cir. 2014), and the court will conduct a discussion of same on the record.

In sum, Naranjo's motion *in limine* seeks to preclude many different types of evidence, but defendants only intend to admit evidence of prior acts of self-harm and threatening self-harm. Consequently, the court will deny—as moot and without prejudice—the portions of Naranjo's motion *in limine* that seek to preemptively preclude evidence of his prior convictions and those of his witnesses, unrelated medical records, and unrelated prior disciplinary records. If defendants seek to admit such evidence at trial, Naranjo may renew his motion to exclude this other evidence.

Naranjo's motion *in limine* will also be denied insofar as it seeks to categorically preclude evidence of prior acts of self-harm. Defendants have established that such evidence is admissible for the limited purpose of proving motive, which is part of their theory of defense. Naranjo, of course, will be free to challenge the admissibility of the proffered evidence on other grounds (for example, under relevant Federal Rules of Evidence), as defendants have not explained what specific evidence they intend to use or what form that evidence will take.

9

### III.    Conclusion

The court will deny Naranjo's pretrial motion *in limine* (Doc. 160) as more specifically stated hereinabove.  The court will grant Naranjo's unopposed motion (Doc. 158) for an extension of time to file a pretrial memorandum, as well as his unopposed motion (Doc. 162) to amend his pretrial memorandum.  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      April 20, 2018